UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE CLINE,<br><br>    Plaintiff,<br><br>    v.<br><br>CALPINE OPERATING SERVICES COMPANY, INC., et al.,<br><br>    Defendants. | Case No. 22-cv-07031-RS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** |

I. INTRODUCTION

This action arises from a vehicle accident at a construction site. Plaintiff George Cline was employed by Gifford's Backhoe, Inc., which has not been named as a party in this action. Cline alleges he was driving a vehicle uphill on a privately owned gravel road to a "drilling rig site" owned or operated by defendant Calpine Operating Services Company, Inc. and/or defendant Geyser Power Company, LLC. Cline's vehicle collided with a vehicle allegedly owned by Geyser Power, and driven with permission by an employee of Calpine, Dennis Miller. Cline asserts he stopped when he saw Miller's vehicle approaching downhill, but that Miller was unable to stop in time, given his high rate of speed.

Calpine and Geyser Power (who are jointly represented) move to dismiss some, but not all, of the claims for relief advanced in the operative Second Amended Complaint (SAC) under Rule 12(b)(6) for failure to state a claim, and/or under Rule 12(b)(7) for failure to join Cline's employer, Gifford's Backhoe, as a necessary party. For reasons explained below, the motion will

be granted in part, and denied in part.

## II. BACKGROUND

The "Facts" section of the Second Amended Complaint alleges:

In November of 2020, Cline was employed by Gifford's, which subcontracted to perform work with defendants Geyser and/or Calpine. Cline was driving in his employer's truck to a privately owned drilling rig site on a gravel road on property controlled by defendants.

The road is too narrow to permit two vehicles to pass safely. Cline was traveling uphill. Miller, a Calpine employee who was in a truck owned by Geyser, allegedly was driving downhill at a high rate of speed, in violation of California law and defendants' vehicle operation rules. Although Cline brought his vehicle to an immediate halt when he saw Miller's truck, Miller was unable to stop and collided head-on into Cline's vehicle.

Following the accident, Cline continued to the drill site and reported the incident to a job site supervisor. Cline was later ordered by Keith Powers, described in the complaint as a "contracted supervisor," to prepare a report regarding the event. Cline asserts he refused to do so because his employer had advised him not to complete a report until the employer was present.

Cline alleges Powers then created a written accident report that he demanded Cline and person who had been a passenger in Cline's vehicle sign. Cline and his passenger initially refused to sign the document because it inaccurately attributed fault for the accident to Cline. Powers then told Cline and his passenger that they would be terminated from their jobs if they did not sign. Under duress both men signed the allegedly false accident report.

Cline continued working for approximately two weeks during which he had experienced back, neck, and wrist pain. Cline's wife then insisted he seek medical attention.

According to the complaint, medical evaluations have confirmed the accident caused injury to Cline's neck, back and wrist. He has undergone neck surgery, but still needs additional treatment for his back and wrists.

Paragraph 37 of the SAC, which appears in the third claim for relief and which is incorporated by reference in the subsequent claims for relief, adds an factual allegation that when Cline reported his injury to his employer Gifford's, he was told he would lose his job if he filed a workers' compensation claim and that he has now been told he will not have a job to return to when his medical treatment is complete. Although Paragraph 37 uses the passive voice and thereby does not expressly state who told Cline he would not, and does not, have a job, the only reasonable inference is that it was Gifford's. Indeed, Paragraph 38 specifies it was "his employer's position" that Cline would not have a job to return to after completing medical treatment.

## III.  LEGAL STANDARD

A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

As noted, defendants also move to dismiss under Rule 12(b)(7) for failure to join a necessary party pursuant to Rule 19. That rule requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests, or would subject any of the parties to the danger of inconsistent obligations. *See* Fed.R.Civ.P. 19(a).

A necessary party is one "having an interest in the controversy, and who ought to be made [a] party, in order that the court may act on that rule which requires it to decide and finally

determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." This standard is met when failure to join will lead to separate and redundant actions. *IBC Aviation Servs. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F.Supp.2d 1008, 1011 (N.D.Cal. 2000). "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed.R.Civ.P. 19(b). If the party is indispensable yet cannot be joined, then the action must be dismissed. See *E.E.O.C. v. Peabody Western Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005).

## IV. DISCUSSION

A. *Negligence and negligence per se*

Cline's first claim for relief, asserted solely against Calpine, seeks to hold Calpine liable for the alleged general negligence of its employee, Miller, with respect to the vehicle collision. The motion to dismiss does *not* challenge the viability of the first claim for relief at the pleading stage.

Calpine does seek dismissal of the second claim for relief, styled as "negligence per se." Calpine is correct that, strictly speaking, negligence per se is an evidentiary presumption that may be applied in certain circumstances, not an independent claim for relief. As such, it effectively is redundant to the negligence claim, although it also puts Calpine on notice that Cline may currently intend to invoke the evidentiary presumption. Defendants' further argument that the complaint does not adequately identify specific statutory provisions to support application of the evidentiary presumption is misdirected, given there is no independent claim for relief in any event. Calpine may explore in discovery the basis of Cline's contentions that the evidentiary presumption applies. Accordingly, the motion to dismiss will be denied with respect to the second "claim for relief," but with the understanding that it is not an independent claim.

B. *Retaliation claims*

The third claim and fourth claims for relief are both asserted against Calpine "and/or" Geyser and allege unlawful retaliation against Cline for having reported the allegedly "unsafe and unlawful" operation of the Geyser truck by Miller. The third claim for relief invokes California Labor Code Section 1102.5, which generally protects "whistleblowers" who report any "violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." The fourth claim for relief is brought under California Labor Code Section 6310, which more specifically protects employees who report any workplace injury or unsafe workplace conditions or practices.

Defendants argue both claims fail because Cline has not adequately alleged (1) that he engaged in the protected activity of making a report, (2) that defendants subjected him to any adverse employment action, or (3) that any adverse employment action Cline may have suffered was causally connected to any protected activity in which he may have engaged. Although defendants argue the allegation lacks detail, the complaint expressly alleges Cline reported the accident to "a job site supervisor." SAC para. 14. In the context of the allegations and claims of the complaint, that is adequate pleading that Cline engaged in protected activity by reporting a violation of law, unsafe workplace condition, and/or workplace injury. Defendants' arguments regarding Cline's subsequent interactions with Keith Powers, the "contracted supervisor," do not undermine the adequacy of that allegation. Even assuming the allegations do not show Cline also made a protected report to Powers, that does not somehow undo his initial report to a job site supervisor.

Defendants' contention that the complaint does not show they subjected Cline to any adverse employment action has merit, however. Powers allegedly did threaten Cline with job loss if he did not sign a written report Powers had apparently prepared, which Cline believed did not accurately describe the accident. Cline, however, asserts he signed the document, and continued working for another two weeks. According to the complaint, Cline stopped working because of his

CASE NO. 22-cv-07031-RS

5

physical injuries sustained in the accident, not because defendants caused him to be fired, caused any change in his working conditions, or otherwise retaliated against him for having reported what he believed to be unsafe and illegal driving by the Calpine employee in the Geyser truck.

The complaint instead alleges he was threatened by his own employer that he would not have a job to return to *if he filed a worker's compensation claim*, and that his own employer has since carried through with that threat. Thus, the allegations show no adverse employment action taken by defendants against Cline, *and* that the adverse employment consequence Cline did suffer was retaliation by his own employer for pursuing a worker's compensation claim, not for having made the alleged report of unsafe and illegal conduct by the Calpine employee. As defendants point out, this also means the complaint does not allege the requisite causal nexus between the protected report of unsafe and illegal conditions and the alleged adverse employment consequence. Accordingly, the third and fourth claims for relief must be dismissed.[1]

C. *Unsafe worksite*

The fifth and final claim for relief also names both Calpine "and/or" Geyser. It alleges defendants violated California Labor Code Section 6400 by failing to provide a safe workplace and safe working conditions. Defendants moved to dismiss on grounds that Section 6400 does not create any independent private right of action. In opposition, Cline invokes the rights employees have to complain of unsafe workplace conditions without being subject to retaliation. That, however, is the subject of the third and fourth claims for relief, which fail as discussed above. Cline, of course, also has an unchallenged right to sue for common law negligence for the

---

[1] Defendants also argue the complaint does not adequately allege a factual basis to support a prayer for punitive damages arising from these claims. Although the allegations asserting a right to punitive damages are quite conclusory, they likely would suffice at the pleading stage were the claims otherwise viable. Because the claims do not survive, however, the issue need not be conclusively decided.

allegedly unsafe conduct that resulted in the accident and his physical injuries. The fifth claim for relief, however, fails to state a claim and must be dismissed.

### D. *Failure to join Cline's employer*

Defendants present their motion under Rule 12(b)(7) in the alternative, should the third through fifth claims not be dismissed for failure to state a claim. Defendants argue that if those claims were to go forward, then Cline's employee Gifford's is an indispensable party, as it is the one who actually terminated his employment.

The real issue, however, is not that Gifford's necessarily is an indispensable *party* in an action against Calpine and Geyser, but what *claims* Cline wishes to pursue in a single action. The SAC currently alleges two largely separate kinds of claims. The first is basically a personal injury claim arising directly from the vehicle accident. Calpine, as the employer of the driver of the other vehicle is an appropriate defendant to that claim. Whether or not Cline could also pursue Geyser for its role as the owner of the truck, he has not chosen to do so. Cline's remedies against his own employer for the accident itself are constrained by Worker's Compensation law.

The second basic claim lurking in the allegations of the SAC is for the job loss Cline allegedly suffered in apparent retaliation for filing a worker's compensation claim. That potential claim, however, lies against Gifford's, not Calpine or Geyser.

Given that both basic claims arise out of a larger set of generally related circumstances, Cline presumably could pursue both basic claims in a single action with Gifford's, Calpine, and Geyser as named defendants. He would have to do so in state court, as there is no diversity jurisdiction for an action between Cline and Gifford's in this court. Alternatively, Cline can pursue the first basic claim against Calpine (and possibly Geyser) in this court, whether or not he then also pursues the second basic claim against Gifford's in state court.

Either way, the third through fifth claims for relief of the existing complaint are not viable not because of a failure to join Gifford's, but because the factual allegations show at most that any

adverse employment action was not retaliation by these defendants for reporting a workplace safety issue, but retaliation by Gifford's for filing a worker's compensation claim.

## V. CONCLUSION

The motion to dismiss is denied as to the second claim for relief, and granted as to the third, fourth, and fifth claims for relief. While it appears the better course would be for Cline to pursue any claims he has arising from his job loss against his employer as opposed to against these defendants, if he in good faith believes he has some basis to allege different or additional facts to support retaliation claims against these defendants, he may file an amended complaint within 15 days of the date of this order. If he elects not to amend, or to dismiss and pursue the matter in state court, he shall file a statement that he is not amending, or a dismissal, within 15 days of this order.

**IT IS SO ORDERED**.

Dated: August 24, 2023

_____
RICHARD SEEBORG
Chief United States District Judge

CASE NO. 22-cv-07031-RS

8